LEWIS TRAVIS v. STATE OF OHIO.

1. PROBATE JUDGE IN FRANKLIN COUNTY PROPERLY DESIGNATED JUDGE OF THE JUVENILE COURT.

Under Sec. 3 of act 98 O. L. 314, in counties having three or more common pleas judges sitting regularly and concurrently, the probate judge is properly designated to act as judge of the juvenile court.

2. JUVENILE COURT ACT NOT VOID FOR INDEFINITENESS IN STATING OFFENSES PROSCRIBED.

Definiteness with which an offense should be charged against a person accused as a requisite of the bill of rights is not intended to apply to statutes declaring certain acts to be criminal. Hence, act 96 O. L. 314, creating juvenile courts and establishing procedure therein, is not void for lack of definiteness in stating the offenses therein proscribed.

3. "DELINQUENT" AND "DEPENDENT" AS APPLIED TO CHILDREN UNDER·JURISDICTION OF JUVENILE COURT SUFFICIENTLY DISTINGUISHED BY ACT.

"Delinquent" and "dependent" children as defined by act 96 O. L. 314, the regulation and control of which is reposed in juvenile courts, are sufficiently distinguished by the act to avoid such confusion in management and control after they become wards of the court as will invalidate the act for indefiniteness.

4. ACT 98 O. L. 314 IS NOT PENAL AS TO REGULATION AND TREATMENT OF CHILDREN TO WHICH IT APPLIES.

Act 98 O. L. 314, regulating the treatment and control of delinquent and dependent children by juvenile courts, is not penal in its operation to children; the punishment for its violation is imposed upon the parents and guardians contributing to the delinquency. Therefore the act is not invalidated for indefiniteness in description of the classes of children to which it is made applicable.

5. PARENTAL CUSTODY OF CHILDREN IS SUBJECT TO INTERESTS OF SOCIETY AND GOOD GOVERNMENT.

The custody, education and moral training of children is naturally in the parent but this right is subservient to the police power of the state to prevent children from engaging or indulging in criminal practices and, in the interests of society and good government, remove them from degrading, immoral and vicious influences.

[Syllabus approved by the court.]

ERROR to Franklin juvenile court.

M. B. Earnhart, for plaintiff in error.

K. T. Webber, Pros. Atty., for defendant in error.

SULLIVAN, J.

The judges of courts having like original jurisdiction may arrange for a proper distribution of the business coming before said courts.

Travis v. State.

As an illustration the court of common pleas of Franklin county is presided over by several judges. They are authorized to establish rules to facilitate the disposition of the business coming before the court. One of these provides for a division of the business among the several judges.

The act in question (98 O. L. 314, Sec. 3) authorizes the judges of the several courts of equal original jurisdiction to designate the one that shall hear and dispose of the business in which each is given equal original authority. Jurisdiction consists of the power to hear and determine. The source of this power resides in the legislature. In this act it is conferred upon the several courts named by that authority, and the mere selection of one to dispose of the business by the several judges is not conferring jurisdiction. For, without such designation, either of the courts named could entertain jurisdiction of the matter specified in the act; whilst if the authority was conferred upon the judges, neither of said courts could exercise the power to hear and determine unless authorized by the judges beforehand.

The court first acquiring jurisdiction would hold it until the action was finally disposed of.

The constitutionality of the act was challenged in the case of *Giltman* v. *State*, before this court in Clark county. We were then of the opinion that the act did not contravene any of the provisions of that instrument. A re-examination of the act does not convince us that our opinion in the Giltman case was wrong; and it is, therefore, adhered to here. This would dispose of all the points presented by plaintiff in error, and render it unnecessary for further discussion and comment.

But it is perhaps well to give a more extended consideration of the points made by plaintiff in error. It is claimed that the act is void for lack of definiteness; that, under the provisions of the bill of rights, an accused is entitled to have the matter charged against him stated with such definiteness that he may be advised as to what he must meet. No one can dispute this claim, but this requisite could not have been intended to apply to statutes declaring certain acts to be criminal. Such statutes must be general in terms for the reason that a violation of the statute would depend in many cases on a different state of facts. The requisite of the bill of rights respecting definiteness would be complied with if the affidavit or indictment set forth the facts claimed to constitute the offense.

As an illustration, take the crime of perjury; the statute defining this offense is familiar. It would not be claimed that an affidavit which

## Franklin County.

simply asserted that John Doe, in a certain action, naming it, testified falsely in a matter material to the issue in the action. The statements claimed to have been false would have to be stated. This illustration might be further shown by other statutes defining criminal offenses. In the act before us, the several acts and conduct to constitute a delinquency in a child has a common, accepted meaning. In each instance whether an act of delinquency has been committed depends upon the particular facts of the case. These facts must be stated with such definiteness that the claimed delinquent and those having charge and control of the child may be advised as to what they must meet. We think the sections of the statutes naming acts of delinquency and what shall constitute a neglected and dependent child are expressed with sufficient definiteness.

It is contended by counsel for plaintiff in error that the acts constituting delinquencies under the act and a dependent child are so intermingled with the provisions for the education of the delinquent or dependent when either becomes a ward of the court that they cannot be distinguished.

We think a careful reading of the entire act successfully refutes this claim.

There are two classes of minors under the age of seventeen years to which the act applies; first, delinquent children; second, dependent children. After it has been judicially determined by the proceedings provided in the act that a child under the above age is either a delinquent or dependent, then the court is authorized to commit the custody to one of the persons or institutions of the state, named for its education, moral training, etc. This seems clear enough and the claim of confusion seems to have no foundation, at least in this statute.

It is not the purpose of the act to punish the child, but to take it out of environments, which, if continued, would result disastrously to it as well as to society, and thereby become a standing menace to the state; and to supply it with opportunities for good moral training and physical comforts and support. The parent, guardian, or anyone having the custody and control of either, who in any way contributes to the delinquency, or in any respect is responsible for the neglect of any such child, may at the same time be brought into court under arrest. If the charges against such person are sustained, he may be punished, but not the child.

Counsel for plaintiff in error, with more than usual feeling, pathos, and oratory, and with some force, urged that the legislature exceeded.

Travis v. State.

the limits of its constitutional power in authorizing minors to be taken from their homes in spite of the protest and objection of the parents, though it was for the purpose of removing the minor from evil influences and further indulgence in vicious habits and practices tending to the ultimate degradation of the child.

That the natural right of parental dominion over the child during minority cannot be made subordinate to any on the part of the state; that during this period the conduct of the child, however injurious it may be, however vicious it may be, does not make him amenable to the police power of the state at common law. When the custody, education and moral training of the child is claimed by contending parents, the courts, in determining the question, keep in view solely the interests of the child; and when the interests of the child require it, commit the custody to strangers in face of parental appeal. If the interests of society and good government require the removal of children up to a certain age from evil influences, the state in doing so is in the exercise of its police power.

At common law, when the custody, education and moral training of children became a question between the parents, the courts disregarded the appeals of either or both and looked simply to the interests of the child.

The right to the custody and society of children in the parent is a natural one and one which the state claims no right to take away except the interests of society require it.

Two interests require such intervention on the part of the state, that of the child and that of society. The interest of the latter is the interest of all of its members. It is the latter interest which authorizes the state to invoke its police power to the end that the children of the state shall not be permitted to engage or indulge in practices and habits that in adults are criminal until they are graduated as hardened and unredeemable criminals.

We find no error of record prejudicial to plaintiff in error and the judgment is, therefore, affirmed at costs of plaintiff, and cause remanded to probate court to carry into execution said judgment.

**Dustin** and **Allread, JJ.,** concur.